IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALOK GULATI, | HONORABLE RENÉE MARIE BUMB |
| Plaintiff, | |
| v. | Civil Action No. 17-6271 (RMB/AMD) |
| ELAINE L. CHAO, Secretary of the United States Department of Transportation, | **OPINION** |
| Defendant. | |

APPEARANCES:

Hanan M. Isaacs, Esq.
HANAN M. ISAACS, P.C.
601 Ewing Street, Suite C-12
Princeton, New Jersey 08540
    Attorney for Plaintiff

Craig Carpenito, United States Attorney
By: Anne B. Taylor, Assistant U.S. Attorney
401 Market Street, 4th Floor
P.O. Box 2098
Camden, New Jersey 08101
    Attorneys for Defendant

**BUMB, District Judge:**

## I.    INTRODUCTION

Plaintiff Alok Gulati ("Plaintiff") filed this lawsuit against the United States Secretary of Transportation, Elaine L. Chao, ("Defendant"), alleging employment discrimination based on Plaintiff's race, religion, and national origin and for retaliation and a hostile work environment under Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et. seq. ("Title VII").

Before the Court is Defendant's motion for summary judgment on all claims, pursuant to Fed. R. Civ. P. 56. [Docket Item 16.] Plaintiff opposes the motion [Docket Item 21], and Defendant has submitted a reply brief. [Docket Item 30.] For the reasons set forth below, the Court will grant Defendant's motion in part and deny it in part.

## II. BACKGROUND[1]

Plaintiff has worked as an engineer for the Federal Aviation Administration ("FAA"), a division of the United States Department of Transportation, since at least June of 1994 in the William J. Hughes Technical Center ("Tech Center") in Atlantic City, New Jersey. Plaintiff self-identifies as an Asian man who was born in India and who practices the Hindu religion. Eduardo Colon-Madera, one of Plaintiff's coworkers during the times relevant to this suit, self-identifies as a Hispanic, Puerto Rican man and a

---

[1] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to the Complaint [Docket Item 1] when appropriate, Defendants' Statement of Undisputed Material Facts ("Def.'s SMF") [Docket Item 16-1], Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("Pl.'s RSMF") [Docket Item 19], Plaintiff's Counterstatement of Undisputed Material Facts ("Pl.'s CSMF") [Docket Item 20], and Defendants' Reply to Plaintiff's Counterstatement of Undisputed Material Facts ("Def.'s Reply to Pl.'s CSMF") [Docket Item 30-1], and related exhibits and documents. The Court distills this version of the record in the light most favorable to Plaintiff, the non-moving party.

Catholic. Radame Martinez, who supervised both Plaintiff and Mr. Colon-Madera at the Tech Center during the times relevant to this suit, self-identifies as a white, Hispanic man who was born in Puerto Rico and who is a non-practicing Catholic.[2]

## A.    The Level 14 Position Application Process

On May 20, 2009, the FAA posted two vacancy announcements for a single new position at the Tech Center to oversee a "Voice over Internet Protocol" ("VOIP") test and evaluation project, which would be paid at the General Schedule Level 14 paygrade ("the Level 14 position").[3] The vacancy announcements were written by Mr. Martinez, who would serve as the selecting official for the Level 14 position. The vacancy announcements delineated four areas of "Knowledge, Skills and Abilities" ("KSAs") for which applicants were requested to provide specific information. The four KSAs included for the Level 14 position were:

1.    Knowledge of data and voice communication networks;
2.    Ability to lead technical projects and teams;
3.    Ability to apply FAA approved test and evaluation methodologies to communication networks test programs; and
4.    Ability to communicate effectively.

---

[2] The parties dispute whether Plaintiff, Mr. Colon-Madera, and Mr. Martinez were aware of each other's respective religious affiliations during the relevant time period. (See Def.'s SMF [Docket Item 16-1], ¶¶ 86-96; Pl.'s RSMF [Docket Item 19], ¶¶ 86-96.)

[3] Though never specifically addressed in the parties' various statements of undisputed fact, both parties acknowledge at various points in their papers that the Level 14 position would represent a promotion for both Plaintiff and Mr. Colon-Madera.

Applications for the Level 14 position were due on June 17, 2009 and initial review of the application packets was undertaken by the Tech Center's Human Resources Department ("HR"). On July 6, 2009, HR sent Mr. Martinez a list of those applications that met the minimum requirements of the Level 14 position. Both Plaintiff's and Mr. Colon-Madera's applications were included on HR's list. FAA's policy regarding promotions at the time of the events in question did not require a selecting official to convene an interview panel or to interview any of the applicants as part of the decision-making process. Mr. Martinez did not convene such a panel or conduct any interviews of the applicants. After evaluating the applications remaining after HR's initial review, Mr. Martinez reviewed each applicant's responses to each KSA listed in the vacancy announcements and assigned each KSA in each application an evaluation of "superior," "satisfactory," or "barely acceptable" and included a brief written rationale therefor. Mr. Martinez assigned an evaluation of "satisfactory" for all four KSAs in Plaintiff's application. Mr. Martinez assigned Mr. Colon-Madera evaluations of "superior" for KSAs 1 and 2 and "satisfactory" for KSAs 3 and 4. After scoring the applications, Mr. Martinez determined that Mr. Colon-Madera had the highest score and recommended him for the position. A senior official at FAA headquarters then approved Mr. Colon-Madera's promotion, which

became effective on August 25, 2009. Plaintiff learned that he was

not selected for the Level 14 position on or about August 27, 2009.

**B.    Plaintiff's EEO Complaint**

On October 5, 2009, Plaintiff contacted a Department of

Transportation Equal Employment Opportunity ("EEO") counselor. On

February 4, 2010, Plaintiff filed a two-count formal EEO complaint,

alleging the following:

1.    [Plaintiff] alleges that the [Department of
      Transportation] discriminated against him on the bases
      of race (Asian), national origin (India), and religion
      (Hindu) when, on either August 27, 2009, or August 28,
      2009, the [Department of Transportation] nonselected
      [Plaintiff] for [the Level 14 position].

2.    [Plaintiff] alleges that the [Department of
      Transportation] discriminated against him on the bases
      of race (Asian), national origin (India), and religion
      (Hindu) (and for the incidents after September 11, 2009,
      reprisal for prior protected EEO activity) when, on a
      continuing basis from July 2007 through to the present,
      the [Department of Transportation] subjected [Plaintiff]
      to a hostile work environment, including--but not
      limited to--the following exemplary incidents:

      a.    Between July and September 2007, Radame Martinez
            ([Plaintiff's] 1st level supervisor) denied
            [Plaintiff's] requests to attend management staff
            meetings while permitting a coworker to attend.

      b.    In August 2007, Mr. Martinez denied [Plaintiff's]
            request to attend Executive Leadership (ELP)
            training while permitting a coworker to attend.

      c.    In March 2008, Mr. Martinez failed to provide
            precise schedule information for a meeting, then
            reprimanded [Plaintiff] for missing the meeting,
            accusing [Plaintiff] without substantiation of
            being absent from work.

      d.    In June 2008, Mr. Martinez accused [Plaintiff]
            without substantiation of being absent from work,
            and declared to [Plaintiff], "you will never

change, this is why I don't trust you and don't want you in my group!"

e.  In February 2009, Eduardo Madera (a team lead on certain projects on which [Plaintiff] works) initially denied [Plaintiff's] request to attend and participate in a VOIP test demo, only finally permitting him to attend when a scheduled attendee was injured at the last minute;

f.  In April 2009, Mr. Martinez only permitted [Plaintiff] to attend Interconnecting Cisco Network Devises training through commuting from his residence to King of Prussia, PA every day for a 5-day training, while permitting coworkers to attend the same class that same year in Atlanta, GA and New York City, NY with full lodging and other per diem benefits;

g.  On June 17, 2009, Mr. Martinez told [Plaintiff], "Aren't all you Indians doctors, lawyers, motel & gas station owners?"

h.  Mr. Martinez excluded [Plaintiff] from formally participating as a presenter in a July 2009 high-level briefing on VOIP issues with [Tech Center] Director Wilson Felder;

i.  In September or October 2009, Mr. Martinez excluded [Plaintiff] from the VHF/UHF Radio Specifications Workshop Meeting;

j.  In August 2009, Mr. Martinez and/or Mr. Madera refused to act on [Plaintiff's] request to attend ISO Project Management Training;

k.  On October 2, 2009, Mr. Martinez falsely accused [Plaintiff] of being late, forcing [Plaintiff] to expend an hour of annual leave under express threat of being held AWOL, yelling at [Plaintiff] in the process; and

l.  On October 19, 2009, Mr. Martinez issued [Plaintiff] a performance evaluation for FY 2009 which contained unsubstantiated derogatory comments regarding [Plaintiff's] performance during FY 2009.

Plaintiff later amended his EEO complaint to include the following additional allegations:

m.  On numerous occasions—including but not limited to June 25, 2009, April 27, 2010, and July 1, 2010— your supervisor sent e-mail correspondence in a restricted format, barring copying, forwarding and responses.

n.  On or about March 2008, your supervisor denied your request to serve as VoIP team leader.

o.  From 2005 to present, your supervisor denied you cash awards and/or time-off awards while granting such awards to others similarly situated to you.

p.  On May 7, 2009, you were again accused of being absent from work.

q.  On or around July 2009, your supervisor denied you the opportunity to serve as ISO team lead.

r.  On or around July 2009, your supervisor denied you the opportunity to serve as Process Improvement Coordinator ("PIC").

s.  On or before May 2010, your supervisor denied you the opportunity to participate in the ISO effort.

t.  On July 8, 2010, you received derogatory comments from your supervisor on your application for the Executive Leadership Program training, comments apparently calculated to lead to the denial of your application.

u.  On July 19, 2010, your supervisor responded with hostility to your request for sick leave, declaring "that this is becoming a pattern."

v.  You were excluded from a September 20, 2010 VOIP-related meeting with Mr. Tran, about which you learned on or about September 29, 2010.

w.  You received unsubstantiated negative comments in your October 21, 2010 performance evaluation.

x.  You were ordered by Mr. Colon-Madera to engage in physical labor with the VOIP team in February 2010 and September 2010 despite previously-disclosed issues with bad back, and were criticized by Mr. Colon-Madera for not showing up after giving prior notice of back issues to Mr. Colon-Madera.

y.  You were disparately denied VISIO software for an unknown duration, discovered in September 2010.

z.  In August 2010, you were denied ELP training for 2010.

aa. In October 2010, Mr. Martinez interfered with your requested office move into a vacant office space which had been approved by another office on three occasions.

bb. On December 20, 2010, you were unjustifiably yelled at by Mr. Martinez in the workplace and in front of a contractor.

Administrative Law Judge Julie Procopiow Todd ("ALJ Todd") ultimately granted summary judgment in favor of Defendant with respect to both counts of Plaintiff's EEO complaint, finding that Plaintiff "has failed to establish, by a preponderance of the evidence, that he was discriminated against based on his race, national origin, religion, and/or in reprisal for prior EEO activity."[4]

Plaintiff filed this Complaint on August 18, 2017 [Docket Item 1].[5] After conclusion of discovery, Defendant moved for summary judgment [Docket Item 16], to which the Court now turns.

---

[4] The parties do not address ALJ Todd's decision in any of their statements of undisputed fact. However, Defendant submitted a portion of ALJ Todd's decision, including the above quotation, as an exhibit to her reply brief. (See Decision, Exhibit BB [Docket Item 30-3], 41-46.) Plaintiff has not indicated any objection to the authenticity of these portions of ALJ Todd's decision.

[5] Neither party indicates in their papers the date on which ALJ Todd's decision was made final. Therefore, for the purposes of this motion, the Court will assume that the present Complaint [Docket Item 1] was timely filed.

**III. STANDARD OF REVIEW**

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, and thus at the summary judgment stage credibility issues should be resolved against the moving party. Big Apple BMW v, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992); Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, "[t]he mere existence of a scintilla of evidence," without more, will not give rise to a genuine dispute

for trial. <u>Anderson</u>, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "[w]here the record ... could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**IV. DISCUSSION**

Plaintiff's Complaint alleges three separate claims: employment discrimination on the basis of race, religion, or national origin (Count One), retaliation (Count Two), and hostile work environment (Count Three). (<u>See</u> [Docket Item 1].) Defendant seeks summary judgment in her favor with regard to each of the three counts contained in Plaintiff's Complaint. The Court shall address these in the order that they were presented by the parties in their briefing.

    **A.   Count One: Discrimination on the Basis of Race, Religion, or National Origin**

Title VII provides, in pertinent part, that it shall be unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2. Under Title VII, there are two methods for a plaintiff to meet its burden to establish that discriminatory animus resulted in an adverse employment action: direct evidence

10

and circumstantial evidence. Anderson v. Wachovia Mortg. Corp.,
621 F.3d 261, 267-68 (3d Cir. 2010).

"Direct evidence of discrimination must be 'so revealing of
[discriminatory] animus that it is unnecessary to rely on the
[McDonnell Douglas] burden-shifting framework, under which the
burden of proof remains with the plaintiff.'" Anderson, 621 F.3d
at 269 (quoting Walden v. Georgia-Pacific Corp., 126 F.3d 506, 512
(3d Cir.1997)). Such evidence must "demonstrate[] that the
'decisionmakers placed substantial negative reliance on an
illegitimate criterion in reaching their decision.'" Walden, 126
F.3d at 513 (quoting Price Waterhouse v. Hopkins, 490 U.S. 228,
277 (1989) (O'Connor, J., concurring)). Direct evidence must first
be strong enough "to permit the factfinder to infer that a
discriminatory attitude was more likely than not a motivating
factor in the [defendant's] decision." Id. (internal quotation
marks and alteration omitted). Second, direct evidence must be
connected to the decision plaintiff challenges. Id. at 515-16.

A claim brought under circumstantial evidence is governed by
the McDonnell Douglas burden-shifting paradigm. See McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1974); see also
Scheidemantle v. Slippery Rock State System of Higher Educ., 470
F. 3d 535, 539 (3d Cir. 2006). To prevail under this framework, a
plaintiff has the initial burden of showing a prima facie case for
discrimination. The plaintiff must demonstrate: (1) he was a member

of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances that gave rise to an inference of discrimination. <u>Jones v. Sch. Dist. Of Philadelphia</u>, 198 F.3d 403, 412 (3d Cir. 1999). A plaintiff may establish the fourth element and show an inference of discrimination through: "evidence of comparators . . . or [by] rely[ing] on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action. <u>Greene v. Virgin Islands Water & Power Auth.</u>, 557 Fed. App'x 189, 195 (3d Cir. 2014) (citing <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 797 n.7 (3d Cir. 2003)).

      1.  <u>Direct evidence of discrimination</u>

Plaintiff argues that certain commends allegedly made by Mr. Martinez to Plaintiff constitute direct evidence of discrimination based on religion or national origin.[6] (<u>See</u> Complaint [Docket Item 1], ¶¶ 16-19.) The parties agree that two of the comments at issue were raised before the Honorable Noel L. Hillman, U.S.D.J, in a case brought by Plaintiff's brother, Rajnish Gulati, regarding this same hiring decision, who discussed them in relation to a motion for summary judgment in that case: <u>Gulati v. LaHood</u>, No.

---

[6] Plaintiff does not identify any direct evidence of racial discrimination.

12-5298, 2015 WL 3970136 (D.N.J. June 29, 2015). As Judge Hillman
summarized:

> The first comment, which was made on or about
> June 17, 2009, was asserted in connection with
> a conversation about Alok Gulati's donations
> to the Disabled Veterans National Foundation,
> when [Mr.] Martinez purportedly said in a
> derisive tone, "good, you should, you can
> afford it. [Y]ou make a good salary." When
> Alok Gulati responded that he did earn a good
> salary, [Mr.] Martinez allegedly said "'aren't
> you all Indians doctors, lawyers, motel & gas
> station owners[.]'"
>
> Then, after [Mr.] Martinez selected [Mr.]
> Colon-Madera for the Level 14 position, in
> response to an inquiry as to the basis upon
> which [Mr.] Martinez made his decision, [Mr.]
> Martinez purportedly told Alok Gulati, "'I
> know you're upset with my decision, but it's
> my decision and I made it because I am a
> Christian[.]'" Although [Mr.] Martinez denies
> making these statements, the Court will assume
> he made such statements for purposes of
> deciding this summary judgment motion.

Gulati v. LaHood, 2015 WL 3970136, at *5 (internal quotations and

citations omitted). Judge Hillman then cited the legal standard

for this kind of alleged direct evidence:

> In order for the comments to serve as direct
> evidence of discrimination, the Court must
> consider how and if they are related to the
> adverse employment action. See Anderson, 621
> F.3d at 269; Parker v. Verizon Pa., Inc., 309
> F. App'x 551, 558-59 (3d Cir. 2009). "'Stray
> remarks by non-decisionmakers or by
> decisionmakers unrelated to the decision
> process are rarely given great weight,
> particularly if they were made temporally
> remote from the date of decision.'" Parker,
> 309 F. App'x at 559 (quoting Ryder v.
> Westinghouse Elec. Corp., 128 F.3d 128, 133

> (3d Cir. 1997)). The Court takes the following
> factors into account when considering stray
> remarks: "(1) the relationship of the speaker
> to the employee and within the corporate
> hierarchy; (2) the temporal proximity of the
> statement to the adverse employment decision;
> and (3) the purpose and content of the
> statement." Id. at 559.

Id. Judge Hillman then went on to find that Mr. Martinez was the
alleged speaker in both instances and that it was he who made the
decision regarding the Level 14 position. Id. Judge Hillman went
on to further find that both statements were temporally proximate
to the adverse employment action; the first comment was made
roughly two months before the adverse action and the second was
made shortly after the adverse action. Id.

With regard to the first comment, Judge Hillman found:

> The first comment was unrelated to the
> decision-making process. The statement
> appears to have been an isolated or stray
> remark about national origin. Plaintiff cites
> no proof of any other comments by Martinez
> related to national origin. The Court finds
> that this isolated statement fails to
> demonstrate that an invidious discriminatory
> reason was more likely than not a motivating
> cause of Martinez's selection.

Id. With regard to the second comment, Judge Hillman found:

> The second comment was made by the decision-
> maker and was related to the decision about
> the Level 14 position. [Mr.] Martinez stated
> that he made the employment decision because
> he is a Christian. The United States Court of
> Appeals for the Third Circuit has noted that
> a "compelling example" of direct evidence of
> discrimination would be a statement that "'I'm
> firing you because you're not a Christian.'"

> Hankins v. City of Philadelphia, 189 F.3d 353,
> 365 (3d Cir.1999) (quoting Venters v. City of
> Delphi, 123 F.3d 956, 973 (7th Cir.1997)).
> Here, much like the "compelling example"
> provided by the Third Circuit, [Mr.] Martinez
> directly stated that his decision was based on
> the fact he is Christian, thereby implying
> that Plaintiff was not promoted because he is
> not a Christian.
>
> As stated above, direct evidence of
> discrimination must allow a factfinder "to
> infer that a discriminatory attitude was more
> likely than not a motivating factor in the
> [defendant's] decision.'" Anderson, 621 F.3d
> at 269 (internal citations omitted). The Court
> finds that if [Mr.] Martinez's statement is
> believed, a trier of fact could infer that
> [Mr.] Martinez utilized religion as a factor
> in selecting a candidate for the Level 14
> position.

Id. at *6. Judge Hillman then further found that the plaintiff

had, through this direct evidence, established a sufficient claim

for religious discrimination under Title VII to deny the

defendant's request for summary judgment. Id.

As Judge Hillman held in the prior case, this Court finds

that the first alleged statement is an isolated and remote stray

remark about Plaintiff's national origin. Plaintiff emphasizes in

his papers that this conversation allegedly took place on the day

that applications closed for the Level 14 position. (Pl.'s Opp'n

[Docket Item 21], 6.) However, while the conversation allegedly

took place in temporal proximity to the deadline for applying to

the Level 14 position, there is no evidence that the conversation

was on the topic of the Level 14 position or that the position was on the mind of Mr. Martinez at the time.

Defendant urges this Court to come to a different conclusion than Judge Hillman did regarding the second comment, because "when placed in its entire context, [the second alleged statement] serves as neither direct evidence of discrimination nor evidence establishing that the reasons for the selection are pretext for discrimination." (Pl.'s Br. [Docket Item 16-2], 5 n.1.) However, as described in Section II. supra, genuine disputes of material fact exist regarding whether Mr. Martinez knew of Plaintiff's religious affiliation at the time he allegedly made the second comment. In conjunction with the content of the alleged second comment, a reasonable jury could find that this constitutes direct evidence of discrimination.

In this case, Plaintiff asserts that there is a third statement by Mr. Martinez that constitutes direct evidence of discrimination on the basis of national origin that was not raised before Judge Hillman in the prior case. (See Complaint [Docket Item 1], ¶ 17.) The allegation put forth by Plaintiff is that on an unknown date in 2009, Mr. Martinez "in Plaintiff's presence stated that Jews and Indians are wealthy compared to the rest of society. (Id.) However, it appears that Plaintiff has withdrawn this allegation. (See Def's SMF [Docket Item 16-1], ¶¶ 97-98; Pl's RSMF [Docket Item 19], ¶¶ 97-98.) Even if the claim were not

withdrawn, this third comment is even more remote than the first statement, _supra_, as Plaintiff never identifies the exact date or any of the context for this alleged third statement. Therefore, it too would be deemed by the Court to be a stray comment unrelated to the Level 14 position and insufficient to sustain a claim under a direct evidence theory of discrimination.

For these reasons, the Court shall grant Defendant's motion insofar as it seeks summary judgment as to a direct evidence theory of race and national origin discrimination and shall deny the motion with respect to a direct evidence theory of religious discrimination.

### 2. Circumstantial evidence of discrimination

#### a. Prima facie case

Defendant concedes that Plaintiff has established his _prima facie_ case for religious discrimination. (Def.'s Br. [Docket Item 16-2], 5 n.2.) Therefore, the Court shall only analyze Plaintiff's _prima facie_ case with respect to his allegations of discrimination based on race and national origin.

Defendant further concedes that Plaintiff has satisfied prongs 1, 2, and 3 of his _prima facie_ case for discrimination on the basis of race or national origin, though Defendant contends that Plaintiff cannot meet his burden as to prong 4. (_Id._ at 8.) Therefore, the Court shall restrict its analysis of Plaintiff's

prima facie case to prong 4 of his race and national origin discrimination theories.

Defendant argues that the minimal alleged comments regarding Plaintiff's race and national origin, described supra, are stray remarks that are insufficient to give rise to an inference of discrimination. (Id. at 9 (citing Vasbinder v. Sec'y Dep't of Veterans Affairs, 487 F. App'x 746, 749–50 (3d Cir. 2012)).) The Court agrees. As an initial matter, neither the first nor the third statement, analyzed supra, mentioned Plaintiff's self-identified race (Asian), therefore they cannot give rise to an inference of racial discrimination. As for discrimination on the basis of national origin, as above, these are only two stray remarks unconnected to the complained of employment action. Plaintiff must provide a greater causal link between the adverse action and the allegedly discriminatory animus in order to establish prong 4 of his prima facie case.

Plaintiff attempts to salvage these prima facie claims by asserting that another Asian colleague, Mr. Nguyen, also had negative interactions with Mr. Martinez. (See Pl.'s Opp'n [Docket Item 21], 15 (citing Nguyen Dec. [Docket Item 22]).) Mr. Nguyen's declaration asserts that he is Asian, but does not indicate that his national origin is Indian, therefore this declaration cannot bolster Plaintiff's prima facie case for discrimination on the basis of national origin. Regarding racial discrimination, Mr.

Nguyen declares that he has had a number of requests denied by Mr. Martinez, but he does not provide any evidence that the complained of treatment is based on racial considerations other than Mr. Nguyen's bare belief. (See generally Nguyen Dec. [Docket Item 22].) This is insufficient to establish prong 4 of Plaintiff's prima facie case. A plaintiff's subjective belief that he was the victim of discrimination, without more, is insufficient to draw an inference of actual discrimination. See DeMary v. Kennedy Health Sys., No. 11-5984, 2014 WL 3748591, at *9 (D.N.J. July 30, 2014) ("it is well-established that a plaintiff's subjective 'belief or feeling that [s]he was the victim of disparate treatment is insufficient, standing alone, to preclude judgment as a matter of law.'" (quoting Jones v. Sch. Dist. of Phila., 19 F. Supp. 2d 414, 420 (E.D. Pa. 1998), aff'd, 198 F.3d 403 (3d Cir. 1999))). The same holds true for the subjective belief of third-parties. Without substantiation of such subjective beliefs, Plaintiff cannot establish prong 4 of his prima facie case. Therefore, the Court shall grant summary judgment in Defendant's favor with respect to theories of discrimination based on race or national origin supported by circumstantial evidence.

    b.    Defendant's proffered non-discriminatory
          reason for the adverse employment action

Defendant's proffered non-discriminatory reason for selecting Mr. Colon-Madera for the Level 14 position rather than Plaintiff

is that Mr. Colon-Madera was deemed more qualified under the objective criteria in the application process, including being ranked higher in the four KSAs, described supra. (See Def.'s Br. [Docket Item 16-2], 10-22.) The Court finds that the rationale proffered by Defendant satisfies her burden and now the burden shifts back to Plaintiff to show that this proffered rationale is in fact pretext to discrimination.

c. Pretext

Under the McDonnell Douglas framework, when a defendant offers a legitimate nondiscriminatory reason for its employment action at the summary judgment stage, "the plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

The ultimate issue remains whether discriminatory animus motivated the employer. Thus, to show pretext under the first prong, the Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find

them unworthy of credence." <u>Jones</u>, 198 F.3d at 413. Under the second prong, Plaintiff may point to evidence that the "employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>, 142 F.3d 639, 645 (3d Cir. 1998) (citing <u>Fuentes</u>, 32 F.3d at 765).

### i.    Religion

With respect to Plaintiff's allegations of religious discrimination, the second statement analyzed, <u>supra</u>, which the Court found to constitute direct evidence of discrimination, if believed by a reasonable finder of fact, would permit the inference that religious discrimination was more likely than not a motivating factor in Mr. Martinez's decision not to select Plaintiff for the Level 14 position. Therefore, this portion of Defendant's motion will be denied.

### ii.    Race and National Origin

Even if Plaintiff had made his <u>prima</u> <u>facie</u> showing regarding circumstantial evidence of discrimination on the basis of race or national origin, which the Court has already found he has not, Plaintiff does not proffer sufficient evidence to allow a reasonable finder of fact to conclude that Defendant's proffered reason was a fabrication nor to allow such a factfinder to

reasonably infer that discrimination was more likely than not a motivating or determinative cause of Mr. Martinez's nonselection for the Level 14 position.

As explained, supra, Mr. Martinez's two alleged comments regarding Plaintiff's national origin were only stray remarks and Mr. Nguyen's declaration does not provide any additional evidence of discriminatory animus, but rather only illustrates Mr. Nguyen's own subjective belief that Mr. Martinez is motivated by discriminatory intent, without any substantiation. Plaintiff alleges further incidents of Mr. Martinez treating Plaintiff in a way that Plaintiff would prefer not to be treated, but Plaintiff does not provide any further support for his allegation that this treatment was the result of animus against Plaintiff on the basis of his race or national origin. (See Pl.'s Opp'n [Docket Item 21], 15-23.) Plaintiff's burden at this stage is not to show that he disliked Mr. Martinez's treatment of him, but rather to show that Mr. Martinez's actions were due to improper animus. Without further evidence of Mr. Martinez's allegedly improper motive, Plaintiff is unable to establish that Defendant's proffered reason for selecting Mr. Colon-Madera is only pretext for discrimination against Plaintiff on the basis of his race or national origin.

Plaintiff further argues that he can establish that Defendant's stated reason for choosing Mr. Colon-Madera is a fabrication based on Mr. Martinez's social interactions with Mr.

Colon-Madera and Mr. Martinez's choice not to discuss with HR whether an independent selecting body should determine who would fill the Level 14 position. (Id.) However, nowhere does Plaintiff cite to any legal authority that supports the contention that these facts alone can meet Plaintiff's burden for showing pretext. (See generally id.) Rather, evidence of social bond between Mr. Martinez and Mr. Colon-Madera may in fact undermine Plaintiff's contention that the selection was made in an atmosphere of racial or national origin bias, because any preference that Mr. Martinez may show for Mr. Colon-Madera may actually be rooted in their individual social bond rather than in an alleged underlying bias in favor of people of a similar race or national origin. Whatever the extent of Mr. Martinez's social bond with Mr. Colon-Madera, it is irrelevant in the context of Plaintiff's burden to show pretext, unless it is connected with evidence of bias on the basis of race or nationality. Aside from noting that Mr. Martinez and Mr. Colon-Madera are of the same nationality and both speak Spanish, Plaintiff does not provide any evidence that their social bond (to whatever extent it exists) is based on a categorical preference for Spanish-speaking Puerto Rican people or on a dislike for Asian people or people of Indian origin.

Regarding Plaintiff's contention that HR should have been consulted about the possibility of putting together an independent selection committee for the Level 14 position, Plaintiff has not

proffered any evidence that HR would have encouraged Mr. Martinez to establish such a body had he inquired of them, nor has he cited to any case law that would show that evidence of such would meet his burden to establish pretext. (See generally id.) Therefore, the Court also finds that Plaintiff has failed to show that this argument is relevant to his burden to prove that Defendant's proffered nondiscriminatory reason for selecting Mr. Colon-Madera is pretext for an actual desire to discriminate against Plaintiff because of his race or national origin.

**B.  Count Three: Hostile Work Environment**

Plaintiff's third claim is for creation of a hostile work environment as a result of Plaintiff's protected EEO activities. (See Complaint [Docket Item 1], ¶¶ 43-44.) Plaintiff has withdrawn this claim with respect to all exemplary incidents that allegedly took place prior to October 8, 2019. (See Pl.'s Opp'n [Docket Item 21], 25.) The alleged exemplary incidents that Plaintiff continues to assert in support of his hostile work environment claim are:

> l.  On October 19, 2009, Mr. Martinez issued [Plaintiff] a performance evaluation for FY 2009 which contained unsubstantiated derogatory comments regarding [Plaintiff's] performance during FY 2009.
>
> s.  On or before May 2010, [Plaintiff's] supervisor denied [him] the opportunity to participate in the ISO effort.
>
> t.  On July 8, 2010, [Plaintiff] received derogatory comments from [his] supervisor on [his] application for the Executive Leadership Program training,

comments apparently calculated to lead to the denial of your application.

u.  On July 19, 2010, [Plaintiff's] supervisor responded with hostility to [his] request for sick leave, declaring "that this is becoming a pattern."

v.  [Plaintiff was] excluded from a September 20, 2010 VOIP-related meeting with Mr. Tran, about which [he] learned on or about September 29, 2010.

w.  [Plaintiff] received unsubstantiated negative comments in [his] October 21, 2010 performance evaluation.

x.  [Plaintiff was] ordered by Mr. Colon-Madera to engage in physical labor with the VOIP team in February 2010 and September 2010 despite previously-disclosed issues with bad back, and were criticized by Mr. Colon-Madera for not showing up after giving prior notice of back issues to Mr. Colon-Madera.

z.  In August 2010, [Plaintiff was] denied ELP training for 2010.

bb.  On December 20, 2010, [Plaintiff was] unjustifiably yelled at by Mr. Martinez in the workplace and in front of a contractor.

(Id. at 26.)

"To establish a hostile working environment claim against an employer, a plaintiff must prove: (1) the employee suffered intentional discrimination on the basis of race, national origin or religion, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person who belonged to the same protected class, and (5) the existence of respondeat superior liability." Spence v. LaHood, No. 11-3972,

2013 WL 355913, at *3 (D.N.J. Jan. 29, 2013) (Simandle, C.J.)
(citing Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d
100, 104 (3d Cir.2009)). The "*sine* qua non of a hostile work
environment claim is a 'workplace . . . permeated with
discriminatory intimidation, ridicule, and insult, that is
sufficiently severe or pervasive to alter the conditions of the
victim's employment and create an abusive working environment[.]'"
McKinnon v. Gonzales, 642 F.Supp.2d 410, 421 (D.N.J. 2009) (quoting
Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002)).
The discriminatory conduct "must be extreme to amount to a change
in the terms and conditions of employment." Feeney v. Jeffries &
Co., Inc., No. 09-2708, 2010 WL 2629065, at *5 (D.N.J. June 28,
2010) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788
(1998)).

> The Supreme Court has instructed lower courts
> "to determine whether an environment is
> sufficiently hostile or abusive by looking at
> all the circumstances, including the frequency
> of the discriminatory conduct; its severity;
> whether it is physically threatening or
> humiliating, or a mere offensive utterance;
> and whether it unreasonably interferes with an
> employee's work performance." Faragher v. City
> of Boca Raton, 524 U.S. 775, 787-88, 118 S.
> Ct. 2275, 141 L. Ed.2d 662 (1998) (internal
> citations and quotation marks omitted). Title
> VII is not intended as a "general civility
> code," and requires that "conduct must be
> extreme" to constitute the kind of "change in
> the terms and conditions of employment" the
> statute was intended to target. Id. at 788,
> 118 S. Ct. 2275 (internal citations and
> quotation marks omitted).

<u>Burgess v. Dollar Tree Stores, Inc.</u>, 642 F. App'x 152, 155 (3d Cir. 2016) (affirming a district court decision granting defendant's request for summary judgment where multiple allegedly hostile events took place in a single month, including one non-consensual touching and one physical threat). "[O]rdinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" do not give rise to liability under Title VII. <u>Faragher</u>, 524 U.S. at 788.

Defendant contends that the events described by Plaintiff do not rise to the level of "severe and pervasive" and do not have any causal connection to retaliatory animus. (<u>See</u> Def.'s Br. [Docket Item 16-2], 28-39; Def.'s Reply [Docket Item 30], 11-13.) Defendant also asserts that a number of the remaining alleged exemplary incidents do not even represent true grievances on the part of Plaintiff. (<u>Id.</u>)

With regard to alleged incident "s", Plaintiff admits that he may have in fact attended the ISO training in question, though not with Mr. Martinez's specific permission. (<u>See</u> Def.'s SMF [Docket Item 16-1], ¶¶ 145-46; Pl.'s RSMF [Docket Item 19], ¶¶ 145-46.) With regard to alleged incident "t", Plaintiff admits that his application to the program was accepted, but that the training was ultimately cancelled due to budgetary constraints. (<u>See</u> Def.'s SMF [Docket Item 16-1], ¶ 147; Pl.'s RSMF [Docket Item 19], ¶ 147.) With regard to alleged incident "u", Plaintiff admits that he was

granted the leave that he requested. (See Def.'s SMF [Docket Item 16-1], ¶ 149; Pl.'s RSMF [Docket Item 19], ¶ 149.) With regard to alleged incident "w", the comments at issue were that Plaintiff should be in the lab more often and that Plaintiff should sometimes replace certain long emails with short conversations. (See Def.'s SMF [Docket Item 16-1], ¶ 152; Pl.'s RSMF [Docket Item 19], ¶ 152.) With regard to alleged incident "z", as with alleged incident "t", Plaintiff was selected for the program, but the entire event was cancelled due to budgetary concerns. (See Def.'s SMF [Docket Item 16-1], ¶ 153; Pl.'s RSMF [Docket Item 19], ¶ 153.)

The remaining instances allege one negative interaction (alleged incident "l"), one missed meeting (alleged incident "v"), one instance of being asked (but not required) to do physical labor, regardless of Plaintiff's bad back (alleged incident "x"), and one instance of Plaintiff being yelled at (alleged incident "bb"). These nine remaining alleged incidents took place over the course of fourteen months, and once placed in the admitted context above, the Court cannot find, even after taking all reasonable inferences in favor of Plaintiff, that such a combination of alleged incidents constitute "severe and pervasive" hostility in the workplace, or that they somehow altered Plaintiff's conditions of employment. Rather, the Court finds that these alleged incidents are each separately and all in combination no more than the "ordinary tribulations" of the workplace. Therefore, the Court

shall grant summary judgment in favor of Defendant as to Count Three.

### C.    Count Two: Retaliation

Plaintiff's second claim is for retaliation as a result of his EEO counseling and complaint ("standalone retaliation"), separate from his claim for a retaliatory hostile work environment, discussed in Section IV.B., supra. (See Complaint [Docket Item 1], ¶¶ 33-42.) As in his hostile work environment claim, Plaintiff has withdrawn his retaliation claim as to all incidents prior to October 8, 2009. (See Pl.'s Opp'n [Docket Item 21], 26, 30.) Defendant argues that Plaintiff is barred from pursuing a claim for retaliation because he failed to exhaust his administrative remedies with respect to a claim for standalone retaliation prior to filing this suit. (See Def.'s Br. [Docket Item 16-2], 39-43.) Plaintiff responds by asserting that he has in fact exhausted his administrative remedies and that a claim for standalone retaliation was encompassed by the complaint before ALJ Todd and by her decision relating thereto. (See Pl.'s Opp'n [Docket Item 21], 30-35.)

"[A] federal employee seeking redress for unlawful workplace discrimination and/or retaliation must first exhaust administrative remedies against the federal employer prior to filing suit in federal court." Marley v. Donahue, 133 F. Supp. 3d

706, 715 (D.N.J. 2015) (citing <u>Wilson v. MVM, Inc.</u>, 475 F.3d 166, 173 (3d Cir. 2007)).

> The exhaustion of administrative remedies
> requirement applies to claims asserted
> pursuant to Title VII, the ADEA, and the
> Rehabilitation Act. <u>Slingland v. Donahue</u>, 542
> F. App'x 189, 193 (3d Cir. 2013) (holding
> Title VII and ADEA claims require
> administrative exhaustion); <u>Wilson</u>, 475 F.3d
> at 173 (holding that Rehabilitation Act claims
> require exhaustion). In general, the process
> includes: (1) making contact with an EEO
> counselor within forty-five days of the
> alleged discriminatory action; (2) filing a
> formal complaint with the EEOC within fifteen
> days from receipt of the agency's final
> decision; and then (3) appealing the agency's
> final decision to the EEOC or filing a civil
> action in federal district court within ninety
> days of the agency's decision. *Marley*, 133 F.
> Supp. at 715, n.16 (citing 29 C.F.R. §§
> 1614.105-1614.109, 1614.401, 1614.407(a); <u>see
> also</u> <u>Green v. Postmaster Gen.</u>, 437 F. App'x
> 174, 177-78 (3d Cir. 2011).

<u>Handle v. Brennan</u>, No. 15-8071, 2019 WL 168830, at *3 (D.N.J. Jan. 11, 2019).

Plaintiff admits in his own briefing that only two claims were presented to ALJ Todd in the EEO proceeding before her: (1) nonselection for the Level 14 position and (2) hostile work environment based on race, national origin, religion, or reprisal for protected EEO activity. (<u>See</u> Pl.'s Opp'n [Docket Item 21], 32-33 (quoting Claims Presented, Pl.'s Ex. DD [Docket Item 25-1], 37-38).)

On their face, these claims presented to ALJ Todd do not include a standalone claims for retaliation; they include the basis for Count One (discriminatory nonselection) and Count Three (hostile work environment) of the present Complaint. (See id.) No evidence has been provided to the Court in the context of the present motion that Plaintiff ever raised a standalone retaliation claim in the underlying administrative action before ALJ Todd. Therefore, the Court shall grant summary judgment in favor of Defendant with respect to Count Two of the Complaint.

Plaintiff attempts to salvage Count Two of his complaint by arguing that he is entitled to a modification of the exhaustion requirement, because his standalone retaliation claim could "'reasonably be expected to grow out of the initial charge of discrimination.'" (Id. at 33 (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 399 (3d Cir. 1976)).) However, all of the cases cited by Plaintiff in support of this assertion only refer to additional acts of alleged discrimination that took place after the filing of the initial EEO complaint being encompassed by the EEO investigation and therefore being rightly included in a district court complaint. See Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984); Parsons v. City of Phila. Coordinating Office of Drug & Abuse Programs, 822 F. Supp. 1181, 1184 (E.D. Pa. 1993); Ostapowicz, 541 F.2d at 398-99. Plaintiff has not directed the Court to any legal authority for the proposition that he may plead,

in a district court complaint, a cause of action that was not pled in the preceding EEO action. (See generally Pl.'s Opp'n [Docket Item 21].) Therefore, the Court must grant summary judgment to Defendant as to Count Two of the Complaint.

Furthermore, even if the Court were to hold that Plaintiff had exhausted his administrative remedies as to Count Two, which the Court will not, Plaintiff also fails to establish the causal link necessary to make his prima facie case of retaliation.

The Third Circuit has previously held that

> [a] prima facie case of illegal retaliation requires a showing of "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Fogleman [v. Mercy Hosp., Inc., 283 F.3d 561,] 567–68 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir.1997)).

E.E.O.C. v. Allstate Ins. Co., 778 F.3d 444, 449 (3d Cir. 2015), as amended on reh'g in part (Mar. 26, 2015).

Plaintiff's allegations in Count Two and in the briefing for this motion boil down to an assertion that Mr. Martinez and Mr. Colon-Madera knew of Plaintiff's EEO activities and then engaged in the allegedly adverse employment actions detailed in Section

IV.B., _supra_.[7] However, there is no evidence presented that any of these alleged adverse actions had a specific connection to Plaintiff's EEO activities. (_See_ generally Complaint [Docket Item 1]; Pl.'s Opp'n [Docket Item 21].) Plaintiff asserts, without citation to the record or to any legal authority, that Mr. Martinez treated Plaintiff more severely after Plaintiff's EEO activity. (_See_ Pl.'s Opp'n [Docket Item 21], 36-37.) However, no evidence is provided relating to Mr. Martinez's treatment of Plaintiff prior to the events of this case, therefore there is no way for a reasonable factfinder to determine that Mr. Martinez's treatment of Plaintiff changed after his EEO activities. (_See_ generally Complaint [Docket Item 1]; Pl.'s Opp'n [Docket Item 21].)

## V. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment [Docket Item 16] will be denied insofar as Defendant seeks summary judgment as to Plaintiff's claims for religious discrimination within the context of Count One. The remainder of Defendant's motion shall be granted. An appropriate Order follows.


s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge
Date: September 23, 2019

---

[7] The Court need not parse those alleged incidents again here, but reiterates that when taken in their admitted context, many of the incidents' apparent severity is greatly reduced.